UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEMARCO MARSHALL, | : CIVIL ACTION NO. 3:CV-12-1163 |
| Petitioner | : (Judge Nealon) |
| v. | : |
| EDWARD F. REILEY, | : |
| U.S. Parole Commission Chairman, | : |
| Respondent | : |

FILED SCRANTON
NOV 13 2014
PER _____
DEPUTY CLERK

**MEMORANDUM**

Demarco Marshall, an inmate formerly confined in United States Penitentiary, Allenwood, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Marshall "contends the DC Parole Commission violated his Constitutional Rights pursuant to the Ex Post Facto Clause of the Constitution." (Doc. 10, amended petition). Specifically, he "asserts that the Parole Commission violated his Constitutional protection afforded through the Ex Post Facto Clause by using his overall behavior while in custody to determine his suitability for parole." Id. Marshall believes that "by doing so, the Ex Post Facto Clause was violated by 'usurping the 1991 DC Parole Guidelines' which states that the Board shall not consider any infraction that occurred more

---

[1] Petitioner is currently confined in the United States Penitentiary, Pollock, Louisiana.

than 3 years prior to the hearing date, except where disciplinary infractions arose to the level of murder, manslaughter, armed robbery or first degree murder." Id. He claims that "but for the DC Parole Commissions errors and violations, he would have received a 1 year set off, where during that 1 year he would have met the requirements of sustained programming achievement and positive institutional behavior which would have led him being eligible for the possibility of parole." Id. Petitioner seeks "this Court to vacate the DC Parole Commission's denial, granting him an immediate remedial hearing nunc pro tunc, for a determination of immediate release and summary judgment pursuant to Rule 56.1." Id.

The petition is ripe for disposition, and for the reasons set forth below, will be denied.

I.  **Background**

Marshall was sentenced by the District of Columbia Superior Court on October 3, 1994, to a life term of imprisonment for second degree murder while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license. (Doc. 13-1 at 4, Sentence Monitoring Computation Data). He completed the twenty-year minimum term of his sentence and became eligible for parole on November 29, 2010. Id. at 5.

On July 22, 2010, the United States Parole Commission (USPC)[2] conducted Marshall's initial parole hearing (Doc. 13-1 at 12, Hearing Summary). Using the 1987 parole guidelines of the District of Columbia Board of Parole, the USPC assessed his Initial Grid Score as three points, a score that indicates that parole should be denied at the initial consideration. Id. at 14. The USPC denied parole, and ordered a reconsideration hearing in thirty-six (36) months. (Doc. 13-1 at 22, Notice of Action).

The decision that Marshall serve thirty-six (36) months rather than twelve (12) months at his reconsideration hearing represented a departure from the rehearing schedule, which calls for rehearings in twelve (12) months in the ordinary case. See id. The USPC provided the following reasons for departing from that schedule:

> The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted because the Commission finds at this time that you would not obey the law if released, and that your release would endanger the public. You are a more serious risk than shown by your rehearing guideline because you need additional programming to remain crime free in the community. The Commission notes that your progress towards obtaining your GED diploma is currently

---

[2] The USPC has jurisdiction to make parole release and revocation decisions for D.C. Code offenders pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code §24-131 (formerly 24-1231).

> unsatisfactory and given your limited education, the Commission finds this will adversely affect community stability factors. Additionally, the Commission notes that you have not taken any psychological or counseling-type programs to address the underlying causes for your criminal conduct. The Commission finds that these types of programs are necessary for you to remain crime free in the community. The suggested programs include Anger Management, Stress Management, Victim Impact, Challenge Program and completion of your GED. Additionally, the Commission finds that you have had opportunity but little effort to engage in productive programming. The Commission notes that you have been in custody for more than 16 years and you have only completed 52 hours of programming (most of it sports and fitness-type classes). Although you have completed more than 600 hours of course work towards obtaining your GED, you voluntarily withdrew from the program in 2003 and have made little to no additional efforts to reengage since that time. Lastly, the Commission finds that you have a history of serious negative institutional adjustment. Although your disciplinary infractions do not specifically fall within the definition of serious negative institutional adjustment as defined in the DC Board of Parole 1991 policy guidelines, the Commission does have the discretion to look at your overall behavior in custody in determining your overall risk and suitability for parole. As such, the Commission finds that you have displayed a pattern of aggressive and high risk behavior since 2002, which includes Refusing a Drug Test in February 2007, Disruptive Conduct (High) in August 2006 and more recently on 5/22/2008, Destruction of Property in December of 2005, Fighting in August, 2005 and more recently on 2/22/2008, Assault in May, 2005, Fighting and Assault in April, 2003, and Possessing a Dangerous Weapon in November of 2002. The Commission finds that this pattern of aggressive and assaultive behavior demonstrates that you are not ready to remain crime free in the community.

<u>Id</u>.

On June 11, 2012, Marshall filed the instant <u>pro se</u> petition in which he seeks a "an immediate remedial hearing, <u>nunc pro tunc</u>, for a determination of immediate

release" applying the 1991 guidelines. (Doc. 10, petition).

## II. Discussion

The District of Columbia Board of Parole promulgated parole regulations for use in 1985. Those parole regulations were not published formally in the District of Columbia Municipal Register until 1987 (the "1987 guideline"). Effective August 5, 1998, jurisdiction to make parole decisions for D.C. Code offenders was transferred to the USPC pursuant to D.C. Code § 24-13(a). The USPC promulgated parole policy guidelines to implement its new duties. See 28 C.F.R. § 2.80, 63 Fed. Reg. 39172 (July 21, 1998). These parole policy guidelines were later amended in 2000. See 65 Fed. Reg. 45885 (July 26, 2000).

However, in 2006, several D.C. offenders, including Tony R. Sellmon, filed an action in the United States District Court for the District of Columbia, challenging the application of the USPC's guidelines to them. All of the litigants had been convicted and sentenced at various times before August 5, 1998. In May 2008, the District Court held that application of the USPC's regulations to those D.C. offenders who had committed their offenses during the time period that the D.C. Board's guidelines were in effect (i.e., March 4, 1985 to August 4, 1998), violated the Ex Post Facto clause of the U.S. Constitution. See Sellmon v. Reilly, 551 F. Supp. 2d 66 (D. D.C. 2008), recon. denied, 561 F. Supp. 2d 46 (D .D.C.

2008).

On July 17, 2009, the USPC published an interim rule to implement the Sellmon decision. See 74 Fed. Reg. 34688 (July 17, 2009). Under the Sellmon rule, as it was called, the USPC undertook to provide new parole hearings for D.C. Code offenders who had committed their crimes between March 4, 1985 and August 4, 1998, and to use the 1987 guidelines of the D.C. Board in conducting those parole hearings. Id.

In addition, in 1991, the D.C. Board had published a "policy guideline" (not a codified regulation) which contained further guidance on the definitions of terms found in the 1987 guidelines. The 1991 policy guideline was in effect from the date of its issue (December 16, 1991) until the Board issued a new policy guideline that superseded it, on October 23, 1995. See (Doc. 13-1 at 24-35, 1991 Policy Guideline and 1995 Policy Guideline).

Because the date of Marshall's offense is March 11, 1994, he falls into the group of D.C. offenders who were entitled parole hearings pursuant to the Sellmon rule. Accordingly, on July 22, 2010, the USPC conducted a parole hearing, properly applying the 1987 D.C. Board guidelines and the 1991 Policy Guidelines to Marshall's case. See (Doc. 13-1 at 7-23).

The function of judicial review on a petition for writ of habeas corpus in the

parole context is to determine whether the Commission abused its discretion. Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000). The court is not empowered to substitute its judgment for that of the Commission in evaluating a habeas petitioner's claims, unless the Commission's exercise of discretion represents an egregious departure from rational decision-making. Id. The Third Circuit Court of Appeals routinely has recognized that a federal court's review of a decision issued by the Commission is limited. Id. The standard applied in such a review "'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" Id. (quoting Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976)). Judicial review should consider whether the Commission "'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'" Id. (quoting Zannino, 531 F.2d at 690).

To prevail on an ex post facto challenge to a sentence, the petitioner has to show both that the law he challenges operated retroactively, that is, that it applied to conduct completed before its enactment, and that it raised the penalty from whatever the law provided when he acted. Johnson v. United States, 529 U.S. 694

(2000); U.S.C.A. Const. Art. 1, §9, cl. 3.  The purpose for the clause, as articulated by the Supreme Court, is to prohibit "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." California Dept. of Corrections v. Morales, 115 S. Ct. 1597, 1601 ( 1995).

The Supreme Court has stated that one function of the Ex Post Facto clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission, and that retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. Garner v. Jones, 529 U.S. 244, 249 (2000).  The Court further stated that "whether the retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account." Id.

In Garner, an inmate filed a § 1983 civil rights action alleging that scheduling of his parole hearings by State Board of Pardons and Paroles violated the Ex Post Facto clause.  The amended rule changed the frequency of required parole reconsideration hearings for inmates serving life sentences from every three (3) years to every eight (8) years. Id. at 246.  In its analysis, the Supreme Court explained that the case turned on the operation of the amendment to the rule within the whole context of Georgia's parole system. Id. at 252.  The Court stated that

Georgia law charges the Parole Board with determining which prisoners "may be released on pardon or parole and [with] fixing the time and conditions thereof." Id. (citing Ga. Code Ann. §42-9-20 (1997)). The Supreme Court found that the "essence of respondent's case, as we see it, is not that discretion has been changed in its exercise but that, in the period between parole reviews, it will not be exercised at all." Id. at 254. The Supreme Court held that the inmate must show that as applied to his own sentence the law created a significant risk of increasing his punishment.

In the instant petition, Marshall claims that the USPC violated the Ex Post Facto clause by "usurping the 1991 D.C. Parole Guidelines which states that the Board shall not consider any infraction that occurred more than three years prior to the hearing date." (Doc. 10 at 7(a)). The USPC, however, did in fact apply the 1991 Policy Guideline. As such, Marshall's ex post facto claim is meritless.

Likewise, his contention that the Parole Commission's decision was arbitrary and capricious and without a rational basis is also without merit.

The 1991 Policy Guideline was promulgated by the D.C. Board of Parole to provide definitions of "descriptive terms used in the Parole Guidelines criteria." See (Doc. 13-1 at 24, 1991 Policy Guideline). The Policy Guideline provided a definition of the term "negative institutional behavior" for purposes of computing

the "Post-Incarceration Factors" portion of the inmate's grid score. Id. That term was defined as follows:

> In initial parole consideration cases, the following disciplinary infractions shall ordinarily be considered as negative institutional behavior:
>
> (3) Two Class II Offenses . . . during the last half of the minimum sentence up to a period of three years. . ..

Id. The term "negative institutional behavior" is defined identically in another portion of the Policy Guideline, under the heading "Factors Countervailing a Recommendation to Grant Parole." Id. at 29-30.

In Marshall's case, the USPC did not rely on "negative institutional behavior" as a "factor countervailing a recommendation to grant parole," because there was no "recommendation to grant parole" in his case, as his guideline score indicated that parole should be denied, not granted. See (Doc. 13-1 at 22, Notice of Action). Likewise, in determining his "grid score" under the "post-incarceration factors" section, it did not count any other institutional misconduct than the two (2) Class II infractions: February, 2008 Fighting and May, 2008 Disruptive Conduct-High, most like threats. See (Doc. 13-1 at 13, "Discipline" section of Hearing Summary). There, the hearing examiner discusses how the 1991 Policy Guideline was applied in determining Petitioner's grid score: "The subject should

receive the plus 1 point for negative institutional behavior for the two Class II shots incurred within the last 3 years." Id. As such, the record demonstrates that the USPC applied the correct law, the 1991 Policy Guideline, and that it applied it correctly.

In Marshall's case, the USPC did not consider his older institutional misconducts in computing his guidelines, nor did they consider it as a reason for denial of parole notwithstanding a score indicating parole should be granted, the only two (2) uses covered by the 1991 Policy Guideline. Rather, the USPC relied on Petitioner's pattern of assaultive conduct, evidenced by his multiple infractions for violent or assaultive behavior since 2002, as one of several reasons for setting a rehearing date of thirty-six (36) months rather than twelve (12) months. The other factors the USPC relied upon were his failure to complete or work towards his GED, his failure to have participated in programming relevant to his offense of conviction, and the USPC's view that his release would endanger the public. See (Doc. 13-1 at 22, Notice of Action). Consequently, the USPC found that Petitioner was not currently suitable for parole, and that it would not find him suitable before a lapse of at least thirty-six (36) months, and evidence of programming and clear conduct. Such decision is clearly not arbitrary, nor capricious. Accordingly, the petition for writ of habeas corpus will be denied.

A separate Order will be issued.

Dated: November 12, 2014

_____
**United States District Judge**